DAN M. WINDER, ESQ.
Nevada State Bar No. 1569
ARNOLD WEINSTOCK, ESQ.
Nevada State Bar No. 810
SCOTT C. DORMAN, ESQ.
Nevada State Bar No. 13108
LAW OFFICE OF DAN M. WINDER, P.C.
3507 W. Charleston Blvd.
Las Vegas, NV 89102
Telephone: (702) 474-0523
Facsimile:  (702) 474-0631
winderdanatty@aol.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LESLIE RICE, an individual, | Case No: |
| Plaintiff, | |
| vs. | **PLAINTIFF'S COMPLAINT** |
| CLARK COUNTY SCHOOL DISTRICT, a county school district; DOES I-V; ROES VI-X, | (42 U.S.C. § 12112(a) et seq., 29 U.S.C.A. § 701 et seq., 29 U.S.C.A. § 2601 et seq., & 42 U.S.C. §1983) |
| Defendants. | |

Plaintiff, Leslie Rice, by and through his counsel, Dan M. Winder, Esq. of the LAW OFFICE OF DAN M. WINDER P.C., herby alleges, avers, and complains as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is found upon federal question jurisdiction, under 28 USC 1331 (b). This case is a civil action arising under the Constitution, laws, or treatises of the United States. This

1

action is authorized and instituted, pursuant to the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12112(a) et seq., the Rehabilitation Act of 1973, 29 U.S.C.A. § 701 et seq., the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.A. § 2601 et seq., and Civil Action for Deprivation of Rights, 42 U.S.C. §1983.

2. Venue is appropriate in the District of Nevada under 28 U.S.C. § 1391, as this is the Federal District where at least one Defendant resides, and Defendants are all residents of the State of Nevada.

3. This Court has jurisdiction over any supplemental state law claims, pursuant to 28 U.S.C. 1367, now and in the event of future amendment of the Complaint, as said causes of action arise out of the same operative set of facts and are/would be related to the claims, of which this Court has original jurisdiction, such that they form the same case or controversy. Plaintiff's related State law claims arise under Nevada Revised Statue ("NRS") 613.330.

## PARTIES

4. The events complained of all occurred within the State of Nevada.

5. At all times relevant to the instant Complaint, Plaintiff Leslie Rice was a resident of Clark County, Nevada.

6. In or about 2006, Plaintiff began working as a Bus Driver for Defendant CLARK COUNTY SCHOOL DISTRICT, located at 5100 W. Sahara Ave. Las Vegas, Nevada, 89112. At the end of his employment, Plaintiff was a Level 48 Bus Driver at the Arville Bus Yard.

7. Plaintiff has exhausted his administrative remedies regarding the workplace discrimination he faced due to his disability. Plaintiff submitted his Employment Discrimination Complaint with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Nevada Equal Rights Commission (hereinafter "NERC") on or about January 15, 2016, with this Complaint being embodied in a formal "Charge of Discrimination" that was signed by Plaintiff on April 1, 2016 (EEOC Charge No: 487-2016-00460). (**Exhibit 1**).

8. The EEOC issued a "Right to Sue Letter" on April 20, 2016. (**Exhibit 2**). Plaintiff has

filed the instant action timely, within ninety (90) days of receipt of the Notice of Right to Sue.

9. Plaintiff has filed a second Intake Questionnaire with EEOC/NERC regarding the discriminatory events to which he was subjected to by Defendant CLARK COUNTY SCHOOL DISTRICT subsequent to his April 20, 2016 Notice of Right to Sue. (**Exhibit 3**). Plaintiff reserves his right to amend the instant complaint to include any and all claims included in his new EEOC/NERC complaint.

10. At all times relevant to the instant Complaint, Defendant CLARK COUNTY SCHOOL DISTRICT (hereinafter "CCSD") was a county school district, duly organized and existing within Clark County, Nevada.

11. Defendant CCSD continuously employs over 500 employees and is engaged in an industry affecting commerce that has 25 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year.

12. Defendant CCSD is vicariously liable for the acts of its employees or agents when they act within the scope of employment. Upon information and belief, the acts and omissions set forth herein were within the scope of Defendants' employment.

13. At all times relevant to the instant Complaint, Defendant CCSD employed Shannon Evans as Director III, Kim Radich as Director of Employee-Management Relations (upon information and belief from Defendant CCSD, Radich has retired in the last few months), and Cedric Cole as Executive Manager of the Diversity and Affirmative Action Programs/ADA Coordinator.

14. The true names or capacities whether individual, corporate, associate, or, otherwise, of Defendants named herein as DOES I through V and ROES VI through X, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names; Plaintiff is informed and believes and therein alleges, that each of the Defendants designated herein DOE and ROE are responsible in some manner for the events and happenings referred to, and caused damages proximately to Plaintiff, and Plaintiff will ask leave of the Court to amend the Complaint to insert the true names and Capacities of DOES I through V and ROES VI through X, inclusive,

when the same have been ascertained, and to join such Defendants in this action.

## FACTUAL ALLEGATIONS

15. In or about March 2012, Plaintiff was the driver of a bus involved in a child fatality. Defendant CCSD determined Plaintiff was not at fault for the tragedy.

16. Since that time, Plaintiff has been profoundly and obviously affected by the event.

17. Defendant CCSD never considered or inquired as to Plaintiff's psychological status from 2012 until after June 30, 2015. During that time, Plaintiff performed his job as school Bus Driver in a satisfactory manner, even though it was very difficult. Plaintiff even had positive job evaluations during this time.

18. On or about June 30, 2015, Plaintiff was deposed in the civil case regarding the tragic March 2012 event.

19. After the deposition and shortly before July 20, 2015, over three years since the March 2012 tragedy, Shannon Evans told Plaintiff that Kim Radich and Cedric Cole would contact Plaintiff. Radich told Plaintiff he needed a workplace accommodation with Defendant CCSD.

20. In July 2015, Evans admitted Defendant CCSD was years late in supporting and providing assistance to Plaintiff.

21. Between March 2012 and July 20, 2015, Defendant CCSD did not fulfill its duty under the ADA to initiate discussions concerning the need for an accommodation for Plaintiff, even while knowing since its occurrence the nature of the traumatic situation in which Plaintiff was involved, the near certainty of trauma resulting from it, and being aware of Plaintiff's general disposition since and absences from work resulting from his psychological difficulties in dealing with the March 2012 tragedy.

22. On or about August 21, 2015, Cole concluded, without factual basis, that Plaintiff was fully capable of performing all of the essential functions of the job of Bus Driver without any accommodation.

23. On or about August 31, 2015, Defendant CCSD required Plaintiff to be psychologically

evaluated. Karen Johnson and Kim Radich notified Plaintiff that day at a meeting.

24. During the meeting, Johnson would not let Plaintiff's Manager Pamela Turner be Plaintiff's witness.

25. At the end of the workday that same day, Plaintiff opened the door for Johnson as they were both leaving. Johnson stated to Plaintiff in a rude manner, "Besides, you need to get back to work." Arville Bus Yard Dispatcher Tanya Givens witnessed this exchange.

26. Plaintiff could not make the August 31, 2015 scheduled date for the psychological evaluation, so Plaintiff and his attorney's office called Radich to let her know Plaintiff was out of town and had to reschedule. Radich required Plaintiff to produce a copy of his itinerary to prove he was out of town. Plaintiff has never heard of another employee having to prove something of that sort.

27. On or about October 2, 2015, Dr. Brown, a psychiatrist hired by Defendant CCSD, diagnosed Plaintiff with Posttraumatic Stress Disorder and Major Depressive Disorder and found the symptoms of Plaintiff's psychological condition prevent Plaintiff from performing the essential tasks of the position of school Bus Driver.

28. During Plaintiff's application for Workman's Comp at the end of 2012, a doctor made similar findings to those of Dr. Brown, and Defendant CCSD knew of those findings.

29. After the Brown examination, Defendant CCSD determined it preferred for Plaintiff to not remain in any part of the Transportation Department, even at one of the vacant positions for which Plaintiff is qualified which do not require driving children and do not implicate the same triggers as the position of driving buses of children. Defendant CCSD stated it will not place Plaintiff in a driving position of any kind and preferred if Plaintiff did not remain in the entirety of the Transportation department.

30. When Radich began the process of placing Plaintiff in a position other than school Bus Driver, at first Plaintiff was not aware the transfer would come with a pay decrease. Then, Radich gave Plaintiff the options of discussing positions with significantly reduced pay and for which Plaintiff had no experience.

31. Upon information of Defendant CCSD's failures to work with Plaintiff in the various ways discussed herein and even while other position options have been mentioned, Plaintiff believes Defendant CCSD has been trying to demote Plaintiff solely to the position of janitor.

32. On or about October 22, 2015, Plaintiff, along with a staff-member of his attorney's office, had a telephone conversation with Kim Radich of Defendant CCSD. Radich mentioned she would look up the following positions in which Plaintiff was interested: Security Specialist, Construction Documents Clerk, Risk Services Technician, and Logistics Specialist I. However, Plaintiff was never updated regarding these positions nor was he ever offered a position for which he was qualified.

33. Plaintiff has no experience as a janitor.

34. Plaintiff also specifically inquired regarding a campus security monitor position. Radich stated that a training session for that position was within the next month, but Defendant CCSD did not find a spot for Plaintiff at the training. Plaintiff also inquired regarding the Equipment Operator/Truck Driver Assistant position but was not offered transfer because it was considered a promotion, even while Plaintiff is qualified for this position.

35. Plaintiff also specifically inquired regarding an open Warehouse II position, which was level 47. Radich stated that Plaintiff needed a Defendant CCSD issued forklift certificate and that she would work with Plaintiff in regards to how to obtain one. Radich never followed up in regards to the Warehouse II position.

36. On or about October 27, 2015, along with a staff-member from his attorney's office, Plaintiff had an appointment with Radich at 2832 E. Flamingo to go over Plaintiff's accommodation options. Radich never met with Plaintiff and instead Plaintiff met with one of her assistants. The appointment was very brief and impersonal, as if Defendant CCSD had already decided the only position which they would offer Plaintiff is janitor.

37. Radich's staff provided Plaintiff with a list of open positions as of that day.

38. Then, Plaintiff was provided with a Qualified Selection Pool ("QSP") printout indicating the positions for which Defendant CCSD deemed Plaintiff qualified.

39. Plaintiff was interested in several positions on both of those lists and expressed his interest to Radich's staff.

40. Plaintiff made Defendant CCSD aware he has previous experience in telecommunications and was also interested in transfer to Defendant CCSD's Safety Department, where Plaintiff could make a difference helping those who have gone through situations similar to the one he went through in March 2012.

41. Plaintiff discussed lateral transfers with Radich. Plaintiff expressed interest in several Level 47 and 48 positions which he desired, including but not limited to Security Specialist, Equipment Operator Truck Driver Assistant, Inventory Control Clerk, Warehouser I/II, Fingerprint Technician, Senior Pest Control Technician, Dispatcher, and Vehicle Service Worker. Defendant CCSD never follow up with Plaintiff regarding any of these positions.

42. On or about December 7, 2015, Defendant CCSD attempted to demote Plaintiff to the position of janitor, a position which Plaintiff had no experience performing and which came with about a $5.00/hour pay cut.

43. Plaintiff's options, amongst other vacant positions for which he is qualified or could easily become qualified, were to accept the janitor position and waive any and all claims against Defendant CCSD, utilize available leave, apply for leave of absence, or resign. Essentially, if Plaintiff did not accept the position, he would be fired.

44. As salt in Plaintiff's wounds, as incentive to accept the only position Plaintiff was ever really offered, upon his acceptance of the janitor position, Defendant CCSD offered to credit Plaintiff with 10 days to his annual leave. Plaintiff felt humiliated to solely be offered a janitorial position, as he has worked hard his whole life to avoid such jobs that he finds personally degrading, especially as an African American.

45. Plaintiff lost his relationship with his wife and later a girlfriend because both women were unable to deal with the effects the March 2012 tragedy had on Plaintiff.

46. Due to Defendant CCSD's failure to accommodate Plaintiff, failure to offer any assistance for a work-related injury that was not Plaintiff's fault, and failure to show any

understanding or sympathy, Plaintiff's depression and stress have exacerbated.

47. As a part of the "interactive process," Plaintiff was forced to exhaust all of his available leave, including FMLA. Plaintiff's intermittent FMLA was approved from November 9, 2015 to September 16, 2016. As of early April 2016, Plaintiff exhausted his intermittent FMLA (made me use all of the days off by him being off all those days without being paid. Plaintiff was also forced into exhausting his sick leave and vacation leave.

48. Upon information of Plaintiff's sheer lack of options, Defendant CCSD forced Plaintiff into retirement, constructively ending Plaintiff's employment with Defendant CCSD. Upon information and belief, Plaintiff's retirement was approved sometime in mid-2016 and was backdated to on or about April 6, 2016.

49. Prior to being told he had the option to take a $5.00/hour pay-cut for a position of janitor for which he had no experience or to resign, Plaintiff helped his family financially. Plaintiff's daughter is in college, needs Plaintiff's assistance, and Plaintiff can no longer support himself let alone help anyone else. Plaintiff also used to assist his parents and brother.

50. Plaintiff had begun a credit redemption program, which he subsequently could not complete due to being terminated by Defendant CCSD.

51. Plaintiff received his last paycheck from Defendant CCSD in around January 2016.

52. Plaintiff was behind paying rent since around January 2016. On or about March 28, 2016, in order to avoid eviction, Plaintiff signed a Promissory Note to his landlord. However, even while he tried his best to hold on to his home, Plaintiff's landlord told him he had to be out before April 1, 2016 or he had to pay an additional $1,200. Plaintiff could not afford this. His last day in his home was March 30, 2016. Plaintiff is currently staying at a friend's home.

53. Plaintiff could no longer afford his cellphone and currently does not have service.

54. Plaintiff has received countless late notices, cannot get around, as his registration lapsed, his tags are expired, he cannot afford car insurance, and he is behind on his car note.

55. Plaintiff had to sign up for Welfare in around February 2016.

56. Having no health insurance, Plaintiff could not afford to pay for his medications any

longer until he signed up for Welfare. Plaintiff also could not afford to get a dental crown.

57. Plaintiff can no longer afford his psychiatrist's, Dr. Nwapa's, copays.

58. Plaintiff's bank account is in the negative. Plaintiff had to take out a payday loan for his gas and light bills, which took funds from his bank account automatically, leaving Plaintiff with less than 0 dollars and overdraft fees. If Plaintiff does not pay his bank about $12.00 (which Plaintiff negotiated down from about $24.00) by July 23, 2016, his bank will close his account.

59. Plaintiff cannot afford simple things like a haircut or a hamburger.

60. Plaintiff's depression has gotten so severe that he has thought about committing suicide. Plaintiff often wonders what he did wrong to have his career taken away, being essentially destitute and degraded by only and solely being offered the "accommodation" of a janitorial position, for which he has no experience and is only available with a $5.00/hour pay cut.

61. Upon information of the harsh treatment Plaintiff faced from Karen Johnson, Kim Radich, and lack of concern he faced from Radich, Johnson, Shannon Evans and Defendant CCSD in general and the fact that Defendant CCSD is being sued in relation to the March 2012 tragedy, Plaintiff believes Defendant CCSD discriminated against Plaintiff due to his disability.

62. Plaintiff's entire life has spiraled downward since Defendant CCSD effectively terminated Plaintiff.

### First Cause of Action
### ADA (42 U.S.C. § 12112(a))
### Discrimination Based on Disability – Failure to Accommodate

63. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

64. Defendant CCSD discriminated against Plaintiff with respect to Plaintiff's compensation, terms, conditions, and/or privileges of employment in willful and malicious violation of the ADA (42 U.S.C. § 12112(a) et seq.).

65. Plaintiff is disabled under the ADA.

66. With and/or without a reasonable accommodation, Plaintiff can perform the essential

functions of employment of several positions which he desires, for which he is qualified at Defendant CCSD or for which he could become qualified without undue hardship to Defendant CCSD, and which have been vacant at some point during the interactive process, as further outlined in the above-facts.

67. Upon information of Defendant CCSD's failure to initiate for years a conversation regarding workplace accommodations with Plaintiff, Defendant CCSD's failure to provide Plaintiff with a reasonable accommodation once the interactive process began, Defendant CCSD's hostility towards Plaintiff, and the insulting ultimatum Defendant CCSD gave Plaintiff in regards to either resigning after exhausting all of his leave or accepting an unreasonable accommodation to a janitorial position for which he has no experience and comes with a $5.00/hr pay-cut, Defendant CCSD discriminated against Plaintiff because of Plaintiff's disability.

## Second Cause of Action
## NRS 613.330
## Discrimination Based on Disability – Failure to Accommodate

68. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

69. The allegations of the First Cause of Action against Defendant CLARK COUNTY also constitute a violation of NRS 613.330.

## Third Cause of Action
## ADA (42 U.S.C. § 12112(a) et seq.)
## Discrimination Based on Disability – Constructive Termination

70. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

71. Defendant CCSD discriminated against Plaintiff with respect to Plaintiff's compensation, terms, conditions, and/or privileges of employment in willful and malicious violation of the ADA (42 U.S.C. § 12112(a) et seq.).

72. Defendant CCSD began Plaintiff's constructive termination on or about December 7, 2015.

73. Upon information of Defendant CCSD's failure to initiate for years a conversation regarding workplace accommodations with Plaintiff, Defendant CCSD's failure to provide Plaintiff with a reasonable accommodation once the interactive process began, Defendant CCSD's hostility towards Plaintiff, the insulting ultimatum Defendant CCSD gave Plaintiff in regards to either resigning after exhausting all of his leave or accepting an unreasonable accommodation to a janitorial position for which he has no experience and comes with a $5.00/hr pay-cut, and the fact that Plaintiff has not been allowed to work since December of 2015, Defendant CCSD has constructively terminated Plaintiff.

## Fourth Cause of Action
## NRS 613.330
## Discrimination Based on Disability – Constructive Termination

74. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

75. The allegations of the Third Cause of Action against Defendant CCSD also constitute a violation of NRS 613.330.

## Fifth Cause of Action
## ADA (42 U.S.C. § 12112(a) et seq.)
## Discrimination Based on Disability – Retaliation – Constructive Termination

76. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

77. Defendant CCSD discriminated against Plaintiff with respect to Plaintiff's compensation, terms, conditions, or privileges of employment in willful and malicious violation of the ADA (42 U.S.C. § 12112(a) et seq.).

78. On or about November 18, 2015, Plaintiff asked for help regarding Defendant CCSD's compliance with the ADA and Defendant CCSD's treatment of Plaintiff in regards to the ADA

from Defendant CCSD's Senior Assistant General Counsel Okazaki. Plaintiff complained to the EEOC/NERC on or about January 15, 2016. Plaintiff also continuously voiced his concerns to Radich during the interactive process.

79. In November of 2015, if not before, Defendant CCSD was aware of Plaintiff's complaints regarding Defendant CCSD's compliance with the ADA and Defendant CCSD's treatment of Plaintiff in regards to the ADA.

80. Defendant began or in the alternative continued the constructive termination process of Plaintiff when Defendant CCSD became aware of Plaintiff's complaint to Defendant CCSD regarding Defendant CCSD's compliance with the ADA and Defendant CCSD's treatment of Plaintiff in regards to the ADA and/or Plaintiff's other above-mentioned complaints.

81. Plaintiff's complaints regarding Defendant CCSD's compliance with the ADA and Defendant CCSD's treatment of Plaintiff in regards to the ADA prompted or in the alternative made more likely or inevitable Defendant CCSD's termination of Plaintiff. The close temporal proximity of Plaintiff's complaints and Defendant CCSD's adverse actions create an inference of retaliation.

82. On or about January 15, 2016, Plaintiff filed his initial EEOC/NERC complaint regarding the matters discussed in the instant complaint.

83. Defendant began or in the alternative continued the constructive termination process of Plaintiff when Defendant CCSD became aware of Plaintiff's ADA complaint to EEOC/NERC.

84. Plaintiff's ADA EEOC/NERC complaint prompted or in the alternative made more likely or inevitable Defendant CCSD's termination of Plaintiff. The close temporal proximity of Plaintiff's complaints and Defendant CCSD's adverse actions create an inference of retaliation.

### Sixth Cause of Action
### NRS 613.330
### Discrimination Based on Disability – Retaliation – Constructive Termination

85. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

12

86. The allegations of the Fifth Cause of Action against Defendant CCSD also constitute a violation of NRS 613.330.

### Seventh Cause of Action
### 29 U.S.C.A. § 701 et seq., Rehabilitation Act of 1973 – Failure to Accommodate

87. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

88. Defendant CCSD discriminated against Plaintiff with respect to Plaintiff's compensation, terms, conditions, and/or privileges of employment in willful and malicious violation of the Rehabilitation Act (29 U.S.C.A. § 701 et seq.).

89. Defendant CCSD is an entity that receives Federal funding.

90. Plaintiff is disabled under the Rehabilitation Act.

91. With and/or without a reasonable accommodation, Plaintiff can perform the essential functions of employment of several positions which he desires, for which he is qualified at Defendant CCSD or for which he could become qualified without undue hardship to Defendant CCSD, and which have been vacant at some point during the interactive process, as further outlined in the above-facts.

92. Upon information of Defendant CCSD's failure to initiate for years a conversation regarding workplace accommodations with Plaintiff, Defendant CCSD's failure to provide Plaintiff with a reasonable accommodation once the interactive process began, Defendant CCSD's hostility towards Plaintiff, and the insulting ultimatum Defendant CCSD gave Plaintiff in regards to either resigning after exhausting all of his leave or accepting an unreasonable accommodation to a janitorial position for which he has no experience and comes with a $5.00/hr pay-cut, Defendant CCSD discriminated against Plaintiff because of Plaintiff's disability.

### Eighth Cause of Action
### NRS 613.330
### Discrimination Based on Disability – Failure to Accommodate

93. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

94. The allegations of the Seventh Cause of Action against Defendant CCSD also constitute a violation of NRS 613.330.

### Ninth Cause of Action
### 29 U.S.C.A. § 701 et seq., Rehabilitation Act of 1973 – Constructive Termination

95. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

96. Defendant CCSD discriminated against Plaintiff with respect to Plaintiff's compensation, terms, conditions, and/or privileges of employment in willful and malicious violation of the Rehabilitation Act (29 U.S.C.A. § 701 et seq.).

97. Defendant CCSD is an entity that receives Federal funding.

98. Plaintiff is disabled under the Rehabilitation Act.

99. Defendant CCSD began Plaintiff's constructive termination on or about December 7, 2015.

100. Upon information of Defendant CCSD's failure to initiate for years a conversation regarding workplace accommodations with Plaintiff, Defendant CCSD's failure to provide Plaintiff with a reasonable accommodation once the interactive process began, Defendant CCSD's hostility towards Plaintiff, the insulting ultimatum Defendant CCSD gave Plaintiff in regards to either resigning after exhausting all of his leave or accepting an unreasonable accommodation to a janitorial position for which he has no experience and comes with a $5.00/hr pay-cut, and the fact that Plaintiff has not been allowed to work since December of 2015, Defendant CCSD has constructively terminated Plaintiff.

### Tenth Cause of Action
### NRS 613.330
### Discrimination Based on Disability – Constructive Termination

101.  Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

102.  The allegations of the Ninth Cause of Action against Defendant CCSD also constitute a violation of NRS 613.330.

### Eleventh Cause of Action
### 29 U.S.C.A. § 701 et seq., Rehabilitation Act of 1973 – Retaliation – Constructive Termination

103.  Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

104.  Defendant CCSD discriminated against Plaintiff with respect to Plaintiff's compensation, terms, conditions, and/or privileges of employment in willful and malicious violation of the Rehabilitation Act (29 U.S.C.A. § 701 et seq.).

105.  Defendant CCSD is an entity that receives Federal funding.

106.  Plaintiff is disabled under the Rehabilitation Act.

107.  On or about November 18, 2015, Plaintiff asked for help regarding Defendant CCSD's compliance with the ADA and Defendant CCSD's treatment of Plaintiff in regards to Plaintiff's disability from Defendant CCSD's Senior Assistant General Counsel Okazaki. Plaintiff complained to the EEOC/NERC on or about January 15, 2016. Plaintiff also continuously voiced his concerns to Radich during the interactive process.

108.  In November of 2015, if not before, Defendant CCSD was aware of Plaintiff's complaints regarding Defendant CCSD's compliance with the ADA and Defendant CCSD's treatment of Plaintiff in regards to Plaintiff's disability.

109.  Defendant began or in the alternative continued the constructive termination process of Plaintiff when Defendant CCSD became aware of Plaintiff's complaint to Defendant

15

CCSD regarding Defendant CCSD's compliance with the ADA and Defendant CCSD's treatment of Plaintiff in regards to Plaintiff's disability and/or Plaintiff's other above-mentioned complaints.

110. Plaintiff's complaints regarding Defendant CCSD's compliance with the ADA and Defendant CCSD's treatment of Plaintiff in regards to his disability prompted or in the alternative made more likely or inevitable Defendant CCSD's termination of Plaintiff. The close temporal proximity of Plaintiff's complaints and Defendant CCSD's adverse actions create an inference of retaliation.

111. On or about January 15, 2016, Plaintiff filed his initial EEOC/NERC complaint regarding the matters discussed in the instant complaint.

112. Defendant began or in the alternative continued the constructive termination process of Plaintiff when Defendant CCSD became aware of Plaintiff's complaint regarding discrimination based on disability to EEOC/NERC.

113. Plaintiff's ADA EEOC/NERC complaint prompted or in the alternative made more likely or inevitable Defendant CCSD's termination of Plaintiff. The close temporal proximity of Plaintiff's complaints and Defendant CCSD's adverse actions create an inference of retaliation.

### Twelfth Cause of Action
### NRS 613.330
### Discrimination Based on Disability – Retaliation – Constructive Termination

114. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

115. The allegations of the Eleventh Cause of Action against Defendant CCSD also constitute a violation of NRS 613.330.

### Thirteenth Cause of Action
### 29 U.S.C.A. § 2601 et seq., Violation of Family Medical and Leave Act of 1993

116. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

117. Defendant CCSD is an employer pursuant to the FMLA.

118. Plaintiff was at all relevant times eligible under the FMLA.

119. Plaintiff was entitled to FMLA leave.

120. Defendant CCSD forced Plaintiff to take FMLA leave and was therefore on notice regarding Plaintiff's FMLA leave.

121. Defendant CCSD interfered with Plaintiff's use of FMLA leave.

### Fourteenth Cause of Action
### 42 U.S.C. §1983, Fourteenth Amendment to the Constitution, & Nevada Constitution Violation of Procedural and Substantive Due Process

122. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs herein as though fully set forth hereinafter.

123. Plaintiff has a constitutionally protected property interest in his continued employment with Defendant CCSD and a legitimate claim of entitlement to his job.

124. Defendant CCSD has de facto terminated Plaintiff without adequate notice or without an adequate reason. Defendant CCSD's termination of Plaintiff was unlawfully discriminatory, arbitrary, and capricious.

125. In the alternative, Defendant CCSD has constructively demoted Plaintiff to the position of janitor without adequate notice or without an adequate reason. Defendant CCSD's demotion of Plaintiff was unlawfully discriminatory, arbitrary, and capricious.

### PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1. Plaintiff be awarded compensatory damages in an amount to be determined at the time of Trial in compensation for his loss of income, pain, suffering, anguish,

   embarrassment, loss of status, and other compensatory damages.

2. Plaintiff be given a position at Defendant CCSD for which he is qualified that is comparable in remuneration to the position of Bus Driver and which is comparable in level (48) and status to the position of Bus Driver.

3. Punitive damages to which Plaintiff is entitled to be determined at the time of Trial pursuant to the ADA and § 1983.

4. Plaintiff be awarded the attorney's fees and costs Plaintiff incurred in the prosecution of this claim.

5. Such other and further relief as the Court may deem just and equitable.

Respectfully submitted this 19 day of July, 2016.

                                        LAW OFFICE OF DAN M. WINDER, P.C.

                                        *Scott C Dorman*
                                        DAN M. WINDER, ESQ.
                                        Nevada State Bar No. 1569
                                        ARNOLD WEINSTOCK, ESQ.
                                        Nevada State Bar No. 810
                                        SCOTT C. DORMAN, ESQ.
                                        Nevada State Bar No. 13108
                                        MATTHEW J. PEIRCE, ESQ.
                                        Nevada State Bar No. 6449
                                        3507 W. Charleston Blvd.
                                        Las Vegas, NV 89102
                                        Tel: (702) 474-0523
                                        Fax: (702) 474-0631
                                        winderdanatty@aol.com
                                        *Attorneys for Plaintiff*